## Case No. 8,080.

### LANZ v. RANDALL et al.

[4 Dill. 425; 3 N. Y. Wkly. Dig. 307; 3 Cent. Law J. 688; 14 Alb. Law J. 363; 24 Pittsb. Leg. J. 68.] [1]

Circuit Court, D. Minnesota. 1876.

NATURALIZATION — DIFFERENCE BETWEEN VOTER AND CITIZEN—REMOVAL OF CAUSES—ALIENS.

1. A state cannot make a subject of a foreign government a citizen of the United States. This can only be done in the mode provided by the naturalization laws of congress.

[Cited in Croesus Mining M. & S. Co. v. Colorado Land & Min. Co., 19 Fed. 83.]

2. Citizenship and the right to vote are neither identical nor inseparable; and the constitution of Minnesota, although it authorizes resident unnaturalized foreigners to vote at state elections and hold office, does not make them citizens of the state, and such persons may remove causes to the circuit court of the United States on the ground that they are aliens, although they have resided in the state for many years and voted at elections, as authorized by the state constitution, or held office under the laws of the state.

[Cited in Poppenhauser v. India-Rubber Comb Co., 14 Fed. 708; Maloy v. Duden, 25 Fed. 673; Betzoldt v. American Ins. Co., 47 Fed. 706.]

[Cited in State v. Board, 31 Neb. 711, 48 N. W. 739, and 51 N. W. 602.]

[See Baird v. Byrne, Case No. 757.]

On motion by the defendant to remand the cause to the state court. It was removed to this court by the plaintiff, on the ground that he was an alien, being a subject of the grand duke of Mecklenburg. The defendants are citizens of Minnesota. The removal was under the act of March 3, 1875 [18 Stat. 470].

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 14 Alb. Law J. 363, and 24 Pittsb. Leg. J. 68, contain only partial reports.]

With respect to the citizenship of the plaintiff, it was admitted that he was originally a native born citizen of the grand duchy of Mecklenburg; that he emigrated to this country many years since; that shortly after his arrival he declared his intention to become a citizen of the United States, in conformity with the laws of the United States upon that subject matter; that for some fifteen years past he has resided in the state of Minnesota; and that on several occasions during his residence in the state he has voted at state elections, as authorized by the state constitution. The plaintiff was never finally admitted to citizenship under the naturalization laws of the United States.

Section 2, art. 3, of the constitution of the United States, provides that the judicial power of the United States shall extend to "controversies * * * between a state, or the citizens thereof, and foreign states, citizens or subjects." Section 2 of the act of congress of 1875, to determine the jurisdiction of circuit courts of the United States, and to regulate the removal of causes from state courts, provides that any suit of a civil nature, in which there shall be "a controversy between citizens of a state and foreign states, citizens or subjects," shall be removable into the circuit court of the United States by either party.

The following are the provisions of the constitution of the state of Minnesota relating to the "elective franchise," referred to by counsel as bearing upon the question as to the jurisdiction of the federal court over the cause:

"Article VII.—Elective Franchise. Section 1. Every male person of the age of twenty-one years or upwards, belonging to either of the following classes, who shall have resided in the United States one year, and in this state for four months next preceding any election, shall be entitled to vote at such election, in the election district of which he shall at the time have been for ten days a resident, for all officers that now are, or hereafter may be, elective by the people:

"(1) White citizens of the United States.

"(2) White persons of foreign birth who shall have declared their intention to become citizens, conformably to the laws of the United States upon the subject of naturalization.

"(3) Persons of mixed white and Indian blood, who have adopted the customs and habits of civilization.

"(4) Persons of Indian blood residing in this state, who have adopted the language, customs, and habits of civilization, after an examination before any district court of the state, in such manner as may be provided by law, and shall have been pronounced by said court capable of enjoying the rights of citizenship within the state.

"Sec. 2. No person not belonging to one of the classes specified in the preceding section, no person who has been convicted of treason or any felony, unless restored to civil rights, and no person under guardianship or who may be non compos mentis or insane, shall be entitled or permitted to vote at any election in this state.

"Sec. 3. For the purpose of voting, no person shall be deemed to have lost a residence by reason of his absence while employed in the service of the United States, nor while engaged upon the waters of this state or of the United States, nor while a student of any seminary of learning, nor while kept at any alms-house or asylum, nor while confined in any public prison.

* * * * * * * * *

"Sec. 7. Every person who, by the provisions of this article, shall be entitled to vote at any election, shall be eligible to any office which now is, or hereafter shall be, elective by the people in the district wherein he shall have resided thirty days previous to such election, except as otherwise provided in this constitution, or in the constitution and laws of the United States."

The practical importance of the question here involved arises from the fact that in Minnesota, and several of the Western states where there are similar constitutional provisions, a large proportion of the foreign born residents are in the same situation as the plaintiff—that is to say, voters without having become naturalized under the laws of congress.

Bigelow, Flandrau & Clark, for the motion. They cited as in point, In re Wehlitz, 16 Wis. 443, and relied on the state constitution, art. 7.

W. P. Clough, contra. He cited 2 Kent, Comm. 43, 49; Story, Const. § 1693; The Dred Scott Case, 19 How. [60 U. S.] 405, 417, 422, 533, 582; Baird v. Byrne [Case No. 757]; Status of Subjects of the Duke of Mecklenburg, 15 Stat. 615, 616. Further, as to jurisdiction of federal courts over suits by or against aliens: Hinckley v. Byrne [Case No. 6,510]; Breedlove v. Nicolet, 7 Pet. [32 U. S.] 413; Bonaparte v. Camden & A. R. Co. [Case No. 1,617]; Mossman v. Higginson, 4 Dall. [4 U. S.] 12; Jackson v. Twentyman, 2 Pet. [27 U. S.] 136; Rateau v. Barnard [Case No. 11,579]; Wilson v. City Bank [Id. 17,797]; Piquet v. Swan [Id. 11,134].

MILLER, Circuit Justice. This case having been removed from the state court into the federal court on the ground that the plaintiff is an alien, a motion is made to remand it to the state court for want of jurisdiction. The plaintiff was born a subject of the grand duke of Mecklenburg, and came to the state of Minnesota about fifteen years ago, where he has ever since resided. Shortly after his arrival in the state he made his declaration of intention with a view to naturalization, but has never applied for or obtained the final certificate of naturalization. He has several times voted at elec-

tions held in the state, and the constitution of the state authorizes him to do so without naturalization. He is also capable of holding office by the state constitution. The question, then, to be considered, is whether such a person in the state of Minnesota is to be considered as a citizen or subject of Mecklenburg within the meaning of the constitution (article 3, § 2).

The plaintiff is undoubtedly a subject of the grand duke of Mecklenburg, having been born such, unless something has been done since his coming to this country to change that relation. It will hardly be contended that length of residence, even with intention never to return, can have that effect. Nor can the incomplete movement towards naturalization under the laws of the United States. The moving counsel, then, must rely on the constitution of the state of Minnesota, and the action of plaintiff under it, to change his citizenship.

I am of opinion that no state can make the subject of a foreign prince a citizen of the state in any other mode than that provided by the naturalization laws of congress; that when the constitution (article 1, § 8) says that congress shall have power "to establish a uniform rule of naturalization, and uniform laws on the subject of bankruptcies throughout the United States," it designed these rules, when established, to be the only rules by which a citizen or subject of a foreign government could become a citizen or subject of one of the states of this Union, and thereby owe allegiance to such state, and to the United States, and cease to owe it to his former government.

But I do not place the decision of the present case on that ground. The state of Minnesota has not attempted to make the plaintiff a citizen of that state, nor do the provisions of her constitution, when applied to the condition of the plaintiff, have that effect. The error has arisen from the same confusion of ideas which induced the advocates of female suffrage to assert, in the supreme court, the right of women to vote. That assertion is based upon the proposition that citizenship and the right to vote are inseparable; therefore, females, who are citizens, must be allowed to vote. This was unanimously overruled by this court. The present case is based upon the same idea, that citizenship and the right to vote are inseparable, and as the constitution of Minnesota gives plaintiff the right to vote, therefore he is a citizen of the state. But the proposition on which both arguments are based is wholly unsound.

There is no necessary or uniform relation between citizenship and the right to vote. In point of fact, by the constitution of Minnesota, and probably of every other state, only about one in five of its citizens is permitted to vote. All children born in the state and residing there are citizens, but until they come to the age of twenty-one years, they cannot vote. They have, however, all the rights that belong to citizenship, because they are citizens. So of all females, of all ages, who constitute half the citizens of any state. On the other hand, some states, and many municipalities, allow persons to vote who have no claim to be citizens, simply because they are residents and possess the other qualifications, and at one time, I believe, persons were permitted to vote in one state on account of property held there, though citizens of a different state. Of this, however, I do not feel sure, though there was no reason, in the nature of things or in the federal constitution, why it should not be so.

These observations show that citizenship is not a sole criterion of the right to vote, and still more clearly that the right to vote may exist without citizenship. This latter is precisely the case in Minnesota. That state, by a wise policy, has invited an industrious and useful population from abroad to occupy her vacant territory, and, as an inducement, has said, "You need not wait till you are naturalized and become citizens to exercise the elective franchise, and to become eligible to office."

That process requires five years. When they have taken the first step towards becoming citizens, by making the legal official declaration to that effect, they are allowed to vote if they possess the other qualifications of age, sex, and residence; but citizenship is not one of them. In doing this, the framers of the constitution had no intention of making a citizen of the foreigner. This was wholly unnecessary to the right to vote, and five-sixths of the persons who are citizens have not that right.

I am of opinion, then, that nothing in the constitution of Minnesota, or in the acts of plaintiff under it, have made, or were intended to make, him a citizen of that state, even if it be within the constitutional power of the state to do so; and that, being a subject of a foreign state, he could rightfully remove his case from a state court to a federal court. The motion to remand should, therefore, be overruled.

Motion overruled.